# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | 2:07cr114 |
| ) | Electronic Filing |
| SCOTT ALAN WOODS ) | |

## MEMORANDUM

On March 27, 2007, a grand jury returned a three count indictment against Scott Alan Woods ("defendant") charging him and a co-defendant with bank robbery, armed bank robbery, and using, carrying and brandishing a firearm during and in relation to a crime of violence, and further charging defendant with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 2113(a), 2113(d), 924(c)(1) and 922(g). Presently before the court are defendant's Motion to Sever Count Four for Trial, Motion Requesting Notice Pursuant to Rule 404 of the Federal Rules of Evidence, Motion for Discovery, Motion for Disclosure of Impeachment Evidence, Motion for Individual Voir Dire, and Motion for Pretrial Hearing on Admissibility of Co-conspirator Statements. The government has responded to the motions indicating that, it does not oppose defendant's motion to sever court four and it will voluntarily comply with a number of defendants' disclosure requests in due course. It opposes some of the discovery requests, the requested timing of such disclosures, the motion for individual voir dire and the motion for a James hearing. The motions are addressed seriatim.

Defendant's motion to sever count four will be granted in part. The court will employ the bifurcation procedure approved by the United States Court of Appeals in United States v. Joshua, 976 F.2d 844, 848 (3d Cir. 1992). This member of the court recently utilized this approach in United States v. Anthony Lee, 2:06cr320 (Lenhardt, AUSA; Douglas Sughrue, Esquire) and will follow a similar protocol in this case. Accordingly, count four (and the evidence related thereto) will be introduced to and considered by the jury after they have reached a verdict on the first three counts.

Defendant has filed a motion to compel the disclosure of all plea agreements, preferential treatment and promises to government witnesses. He also has filed a motion

motion for discovery requesting the immediate production of all forms of Brady and Brady-type impeachment material, a written statement outlining in detail any uncharged misconduct evidence that the government will seek to introduce in connection with any person, early access to all Jencks material, a witness list, identification of all unindicted co-conspirators, identification of any known witnesses who will not be called to testify, identification of individuals who were interviewed and did not implicate defendant, a written summary of all expert testimony to the proffered, all police reports not yet furnished, all reports and notes authored by officers and prosecutors that pertain to defendant, any information that a witness has engaged in a criminal act or is under investigation, any information bearing on a witness' cognitive abilities or propensity toward truthfulness, and any information in the police officers' personnel files that correlates to the above.

The government has acknowledged its obligations under Brady and Rule 16 and does not oppose the requests in defendant's motion to compel. With regard to his motion for discovery, its has (1) agreed to provide all pertinent "rap sheets" and conduct a review for matters of officer discipline, (2) identified the general type of uncharged conduct that will be in its case-in-chief, (3) expressed its intent to disclose Jencks material a day before trial, (4) indicted there are no unindicted co-conspirators or witnesses under investigation, and (5) announced its willingness to have the pertinent officers undertake a review of their personnel files for all material within the scope of defendant's proper requests. It resists the motion in all other aspects.

To the extent defendant seeks a list of the government's witnesses or the disclosure of co-conspirators' statements that the government will proffer at trial, defendants' motion will be denied for a number of reasons. First, the government has acknowledged its obligations under Rule 16 and indicated its intent to comply with those obligations fully. Rule 16 was not designed to provide a defendant with a vehicle to discover the government's case in detail or the strategy it intends to pursue at trial. United States v. Fioravanti, 412 F.2d 407, 410 (3d Cir.), cert. denied, 396 U.S. 837 (1969). Nor is the rule designed to provide a defendant with verification that the use of anticipated evidence at trial by the defense is not vulnerable to

attack by evidence within the government's possession.  United States v. Randolph, 456 F.2d 132, 136 (3d Cir.), cert. denied, 408 U.S. 926 (1972).  In fact, in sharp contrast with these propositions, the United States Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas delineated in Rule 16, "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution."  United States v. Ramos, 27 F.3d 65, 67-68 (3d Cir. 1994).  As a general matter these other areas are limited to the Jencks Act and materials available pursuant to the so-called "Brady doctrine."  Id. at 68.

Second, the government has no obligation to produce an outline of the evidence it will use at trial.  A defendant is not entitled to conduct a wholesale review of the government's investigation.  See Weatherford v. Bursey, 429 U.S. 545, 559 (1977) (there is no general constitutional right to discovery in a criminal case).  Nor is a defendant entitled to obtain a list of the government's witnesses through discovery.  See United States v. DePasquale, 740 F.2d 1282, 1294 (3d Cir. 1984), cert. denied, 469 U.S. 1228 (1985).  Similarly, there is no authority to support a defendant's request for the specifics of each government witness' proposed testimony.  See Fioravanti, 412 F.2d at 410 (a defendant has no right to discover the minutia of the government's evidence or the manner in which it will be used).  And even assuming arguendo that this court has some residual discretion to order the pretrial disclosure of the government's evidence in appropriate circumstances, the current record falls woefully short of presenting sufficient grounds to justify such an extraordinary measure.

Finally, "the statements of co-conspirators, whether indicted or not, are not available to the defendant under Rule 16." 8 J. Moore, Moore's Federal Practice, ¶ 16.04[1], 16-64.  Every circuit court to address the issue has held that such statements are not discoverable under Rule 16 and that disclosure of such statements is governed by the Jencks Act, regardless of whether the co-conspirator will be called as a witness.  See United States v. Tarantino, 846 F.2d 1384, 1418 ( D.C. Cir.), cert. denied, 488 U.S. 840 (1988); United States v. Roberts, 811 F.2d 257, 258 (4th Cir. 1987) (en banc); United States v. Diaz, 834 F.2d 287 (2d Cir. 1987), cert. denied, 488 U.S. 817 (1988).   These courts have reasoned that disclosure of such statements is

governed by the Jencks Act because the government must present some witness who will testify to the unavailable co-conspirator's statements. Accordingly, to the extent the defendant requests pretrial disclosure of the actual co-conspirator statements through the identification of records and information bearing on any non-witness declarants whose statements are to be offered at trial, the request must be denied.[1]

Another area remaining in dispute concerns the potential disclosure of impeachment material. As a general matter, a defendant's requests for impeachment material such as the criminal records of and promises or inducements made to prospective government witnesses raise issues under Brady and the Jencks Act.[2] In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held that due process requires the disclosure of "evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. The Supreme Court subsequently held that evidence which may be used to impeach the testimony of a government witness falls within the ambit of Brady when the credibility of the witness may have an effect on the jury's determination of guilt or innocence. See Giglio v. United States, 405 U.S. 150, 154 (1972; see also United States v. Starusko, 729 F.2d 256, 260 (3d Cir. 1984); United States v. Ramos, 27 F.3d 65, 68 (3d Cir. 1994) (Brady material includes "materials that might affect the jury's judgment of the credibility of a crucial prosecution witness") (quoting United States v. Hill, 976 F.2d 132, 134-35 (3d Cir. 1992)). In United States v. Agurs, 427 U.S. 97, 107 (1976), the Supreme Court modified the Brady rule to require the government to disclose exculpatory evidence even when the defendant has not requested the information. Id. at 107;

---

[1] In contrast, to the extent the government has information that significantly undermines the truthfulness of a critical "non-witness declarant," such information may well fall within the scope of Brady even though discovery of the specific statement is not available.

[2] The Jencks Act provides that any statement or report made by a government witness which relates to the subject matter of the witness' testimony must be disclosed after the witness has testified under direct examination. See 18 U.S.C. § 3500(b). The government has not indicated when it intends to make its Jencks Act disclosures, but the government's customary practice in this district is to make such disclosures at least a few days before trial.

see also United States v. Perdomo, 929 F.2d 967, 970 (3d Cir. 1991).

The so-called Brady doctrine generally is understood as a rule of minimum fairness. United States v. Higgs, 713 F.2d 39, 42 (3d Cir. 1983), cert. denied, 464 U.S. 1048 (1984). It establishes a prosecutorial obligation rather than a general rule of pretrial discovery. The government thus has an obligation to produce favorable material bearing on a defendant's culpability or punishment as well as material bearing on the credibility of any witness who will be used to establish material matters at trial. This obligation is not to be used, however, to permit a defendant to obtain wholesale discovery of the government's principal case. See Higgs, 713 F.2d at 42; United States v. Bocra, 623 F.2d 281, 285 (3d Cir. 1980).

It is well-settled that the government's obligations under Brady require it to disclose actual exculpatory evidence without undue delay. Brady impeachment material ordinarily must be disclosed "in time for its effective use at trial." Higgs, 713 F.3d at 44; United States v. Blackwell, 954 F. Supp. 944, 968 (D.N.J. 1997). A district court has general discretionary authority to order the pretrial disclosure of Brady impeachment material and that discretion is to be exercised in a manner which "ensure[s] the effective administration of the criminal justice system." Government of Virgin Islands v. Martinez, 847 F.2d 125, 127 (3d Cir. 1988); Blackwell, 954 F. Supp. at 968. As to this material, the government requests leeway to turn such material over pursuant to a structured timetable.

While the court recognized in Higgs that a defendant's due process rights to a fair trial are not violated where the disclosure of Brady impeachment material occurs in time to be used effectively, subsequent cases by the Third Circuit have reiterated and encouraged adherence to the long-standing policy of promoting the early production of all types of Brady material, including impeachment and so-called Higgs materials. See Starusko, 729 F.2d at 261 (citing United States ex rel. Marzeno v. Gengler, 574 F.2d 730, 739 (3d Cir. 1978); United States v. Kaplan, 554 F.2d 577, 578 (3d Cir. 1977)); see also United States v. Giampa, 904 F. Supp. 235, 281 (D.N.J. 1995); Blackwell, 954 F. Supp. at 968. While the government's production of Higgs-type impeachment material may well overlap with its production under the Jencks Act and provide defendant with advance notice of certain witnesses the government intends to use

-5-

at trial, the court notes that after disclosure is made defense counsel can more fully advise his client regarding the appropriate development of the case, including consideration of any plea agreement offered by the government. In light of all of the circumstances, the government is encouraged to disclose all such material without further delay, and in any event it will be ordered to produce all <u>Brady</u> impeachment material no later than ten calendar days prior to trial.[3]

Defendant also has filed a motion for notice of the government's intention to use evidence and requests timely notice of any prior bad acts the government intends to introduce pursuant to Rule 404(b). The government indicates that the only evidence arguably subject to that rule is evidence indicating defendant and his co-defendant were habitual drug users. It will seek to admit such evidence in order to show defendant had motive to commit the bank robbery with his nephew and to place the alleged planning of the robbery by the co-defendants in proper perspective.

Use of prior bad act evidence to establish motive is authorized by the rule itself. <u>See</u> Fed. R. Evid. 404(b). While the government has provide notice of its intent to use such evidence through its response, the Rule requires it to give formal notice of its intention to use such evidence prior to trial. Rule 404 (b) specifically provides "that upon request by the accused the prosecution in a criminal case shall provide reasonable notice in advance of trial . . . of the general nature of any evidence it intends to introduce at trial."

The rule requires only the disclosure of the general nature of the evidence the

---

[3]Of course, this ruling has no bearing on the government's disclosure of information that falls solely under the Jencks Act. It is well-settled that the plain language of the Jencks Act precludes a court from compelling the disclosure of Jencks Act material prior to the completion of a government witness' testimony on direct examination. <u>See</u> <u>United States v</u>. <u>Hill</u>, 976 F.2d 132, 140 (3d Cir. 1992); <u>United States v. Murphy</u>, 569 F.2d 771, 773 (3d Cir.), <u>cert</u>. <u>denied</u>, 435 U.S. 955 (1978). Although courts lack the authority to order the early disclosure of Jencks material, the Third Circuit nevertheless has endorsed the prevailing practice of the government to disclose Jencks material prior to trial. <u>See</u> <u>Murphy</u>, 569 F.2d at 773; <u>Hill</u>, 976 F.2d at 140. The government is encouraged to follow its customary practice in this jurisdiction and disclose all remaining Jencks material at least three business days prior to trial.

government intends to introduce. A demand for specific evidentiary detail, such as dates, times, places and persons involved is overly broad. See United States v. Alex, 791 F. Supp. 723 (N.D. Ill. 1992). Thus the disclosure of "the general nature" of such evidence is that which is sufficient to put a defendant on notice as to which of his or her past episodes of conduct may be used by the government at trial.

What constitutes "reasonable notice in advance of trial" is determined by the circumstances and complexity of the prosecution. In Alex, the court ordered disclosure of Rule 404 (b) evidence seven days prior to trial. In contrast, the court in United States v. Williams, 792 F. Supp. 1120, 1133 (S.D. Ind. 1992), noted generally that disclosure within ten days prior to trial constitutes reasonable advanced notice. Similarly, in United States v. Evangelista, 813 F. Supp. 294, 302 (D.N.J. 1993), the court ruled that disclosure ten business days prior to trial is sufficient notice.

Here, the rule provides defendant with the right to formal notice of all potential Rule 404 (b) evidence which the government intends to introduce at trial. Accordingly, the court will grant the defendant's Rule 404 (b) motion and direct the government to provide the required general notice no later than five calendar days prior to trial.

Defendant seeks what is known as a "James" hearing in order to ascertain if statements of co-conspirators are admissible under Rule 801 of the Federal Rules of Evidence. Rule 801(d)(2)(E) exempts from the hearsay rule "a statement by a co-conspirator of a party during the course of and in furtherance of the conspiracy." In determining whether the co-conspirator exception applies in a particular case, the trial court must determine, by a preponderance of the evidence, that there was a conspiracy between the declarant and the party against whom the evidence is offered; and that the hearsay statements sought to be admitted were made during the course of the conspiracy and in furtherance of its goals. Bourjaily v. United States, 483 U.S. 171, 175-76 (1987); United States v. Gambino, 926 F.2d 1355, 1360 (3d Cir. 1991).

A pretrial hearing to establish such a foundation for a co-conspirator statement is a matter within the trial court's discretion. The Third Circuit, under certain circumstances, has allowed such statements to be admitted subject to the government making the required showing

-7-

before the close of its case. United States v. Continental Group, Inc., 603 F.2d 444, 456-57 (3d Cir. 1979), cert. denied, 444 U.S. 1032 (1980). It has stated:

> While the practicalities of a conspiracy trial may require that hearsay be admitted "subject to connection," the judge must determine, when all the evidence is in, whether in his view the prosecution has proved participation in the conspiracy, by the defendant against whom the hearsay is offered, by a fair preponderance of the evidence independent of the hearsay utterances.

United States v. Bey, 437 F.2d 188, 191 (3d Cir. 1971)(quoting with approval United States v. Geaney, 417 F.2d 1116, 1120 (2d Cir. 1969), cert. denied, 397 U.S. 1028 (1970)).

In the instant action, the co-defendant has already pled guilty. The government has outlined in general the planning of the robbery as relayed by the co-defendant and identified the statements he gave to police describing the planning of the robbery between himself and defendant. To this extent defendant is alleged to have been a direct participant in the anticipated co-conspirator conversation. Given this backdrop, defendant has not shown any basis for the relief requested and the Court does not believe it will have any difficulty making rulings during trial on the admissibility of any proffered co-conspirator statements. Accordingly, defendant's motion will be denied.

Finally, defendant has filed a motion for individual voir dire and sequestration of jurors during the voir dire process. Defendant maintains that individual questioning on sensitive areas such as biases, prior encounters with the legal system, opinions and beliefs on gun ownership and so forth will be necessary. This member of the court's standard procedure in conducting voir dire in a criminal case, whereby general questions are asked of the group as a whole and then follow-up questioning is conducted with each perspective juror in private, alleviates the grounds for defendant's motion. Accordingly, it will be denied.

An appropriate order will follow.

Date: June 27, 2008

         David Stewart Cercone
         David Stewart Cercone
         United States District Judge

cc: James H. Love, AUSA

      William C. Kaczynski, Esquire
      1008 Manor Complex
      564 Forbes Avenue
      Pittsburgh, PA 15219